UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES P. MARSHALL, not individually but in his capacity as co-trustee of the 4-M River Farm Trust, <br><br> Plaintiff, <br><br> v. <br><br> BETH MUNDER, individually and as co-trustee of the 4-M River Farm Trust, <br><br> Defendant. | No. 23 C 1958 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff James P. Marshall, one of two trustees of the 4-M River Farm Trust ("the Trust"), brings this diversity action against Defendant Beth Munder, his co-trustee, alleging that she breached her duty of trust through her misadministration of Trust funds and other acts as trustee. Marshall seeks compensatory and punitive damages on behalf of the Trust (Count I), as well as Munder's removal as co-trustee (Count II). Munder moves to dismiss Marshall's complaint, arguing that only the Trust's beneficiaries may sue trustees for breach of trust, which she then claims divests this Court of subject matter jurisdiction over Count II.[1] Because Illinois law empowers trustees to sue their co-trustees for breach of trust, the Court denies Munder's motion to dismiss.

---

[1] Although Munder is correct that Count II does not put more than $75,000 in controversy on its own, *see Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799–800 (7th Cir. 2003) (holding that an injunction is valued by "what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand"), she may be incorrect that the Court would lack subject matter jurisdiction over Count II if it were to dismiss Count I because "[i]f the complaint as filed puts more than $75,000 at issue, then a district court has jurisdiction and may resolve on the merits every legal theory and aspect of damages. Whether [28 U.S.C.] § 1332 supplies subject-matter jurisdiction must be ascertained at the outset; events after the suit begins do not affect the diversity jurisdiction." *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004); *see also id.* at 994 ("Thus [s]ubject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails to state a claim." (internal quotations omitted)). Because Count I of Marshall's complaint survives, the Court, does not dwell on this issue.

1

## BACKGROUND[2]

Roberta Marshall settled the Trust on September 1, 1992, for the benefit of her great-grandchildren. Although Roberta had four children, she named only two—Marshall, now a resident of Florida, and Munder, presently a resident of Illinois—as co-trustees. When she formed the Trust, Roberta acknowledged prior gifts of $10,000 to each of her living grandchildren and directed the trustees to make additional $10,000 gifts to individual trusts in the name of any future born grandchildren. Roberta also directed the trustees to make $10,000 gifts to individual trusts in the name of any future born great-grandchildren. Aside from these gifts, the terms of the Trust direct the trustees to make payments from the Trust's income and principal that they deem necessary for the health, maintenance, education, and support of Roberta's grandchildren and great-grandchildren. Despite the birth of a great-grandchild in January 2022, the trustees have not yet made the required $10,000 gift.

The Trust holds a one-half interest in the Marshall Family Farm, which consists of about 800 acres of land in LaSalle County, Illinois. Aside from the income that the farm generates, the Trust accumulates wealth from Department of Agriculture ("DOA") subsidies that the DOA pays to the Marshall Family Farm. Since December 31, 2014, these income streams have generated over $335,000 in Trust revenue. Although Marshall and Munder are co-trustees, Munder has exercised exclusive control over the Trust's bank account since December 31, 2014. In 2016, Munder began distributing Trust funds to Roberta's children without consulting Marshall or obtaining his consent as co-trustee. Munder split $20,000 equally among Roberta's four children, including herself and Marshall, in April 2016. She then distributed another $60,000 in

---

[2] The Court takes the facts in the background section from Marshall's complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Munder's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

the same manner in April 2017. In March 2018, Munder unevenly distributed a total of $12,160 between the four children. Finally, in March 2019, Munder paid a total of roughly $1,900 to herself and two siblings, excluding Marshall from this distribution.

Munder made further distributions of Trust funds to Roberta's ten grandchildren without Marshall's consent. In December 2020, Munder distributed $50,000 between the grandchildren despite Marshall proposing distributing only $12,000. Munder argued that $50,000 was justified because her "generation never received a dime in personal distributions from 4-M" and she felt the grandchildren should have the opportunity to invest their portions of the Trust as they desired. After Marshall learned about the $50,000 distribution, he demanded control of the Trust's bank account. Munder refused and added that she received legal and financial advice that the $50,000 distribution was proper. Then, in December 2021, after Marshall asked Munder to stop making further distributions while he obtained legal advice concerning the Trust's administration, Munder distributed a total of $10,000 to each of the ten grandchildren and $2,585.58 to a separate family-owned business that Munder operates.

Aside from her distributions of Trust funds, Marshall complains about several of Munder's other actions. In 2018, Munder worked with an attorney to revise the terms of the Trust to remedy several problems the attorney claimed would occur after Roberta's grandchildren each turned thirty. After Marshall rejected the revised language, Munder paid the attorney nearly $30,000 from the Trust for his services without providing Marshall with any invoices. In 2021, after Marshall obtained an opinion letter from a different attorney concerning Munder's operation of the Trust, Munder refused to pay this attorney's fees on the grounds that Marshall did not consult her about obtaining the letter. Munder also transferred the Trust's bookkeeping duties to her sister-in-law without Marshall's consent; denied Marshall access to

the Trust's check register; failed to send Marshall original versions of Trust documents; operated a farm in competition with the Trust's business; and declined to sign an agreement with a local government entity because of her disputes with Marshall and other relatives concerning the operation of the other farm.

Marshall alleges that Munder's actions amount to a breach of trust. He sued on March 28, 2023, seeking actual and punitive damages of over $185,000 for the Trust, as well as Munder's removal as co-trustee.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). If, as here, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's

favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

## ANALYSIS

The Court has subject matter jurisdiction because Marshall's complaint puts more than $75,000 in controversy and Marshall and Munder are citizens of different states. 28 U.S.C. § 1332(a). Munder does not challenge the sufficiency of Marshall's allegations. *See* Doc. 16 at 3–4. Rather, Munder's only dispute with Marshall's complaint is whether Marshall, her co-trustee, can sue her for breach of trust. Munder argues that only beneficiaries, not trustees, can bring such claims. *See id.* at 4 ("No beneficiary to date has brought a breach of fiduciary duty action. Plaintiff, as a current co-trustee, cannot state a claim for breach of fiduciary duty against Defendant, another current co-trustee."). Marshall disagrees, contending that Illinois law governing trust administration empowers trustees to remedy breaches of trust committed by co-trustees. *See* Doc. 20 at 4–5.

### I. Standing

Because Marshall raises the issue in his response and Munder addresses it in her reply, the Court first briefly considers whether Marshall has Article III standing to bring this case in federal court. Marshall bears the burden of establishing standing, *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012), and must show:

> (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and

>> (iii) a likelihood that the injury will be redressed by a favorable decision.

*Id.* at 842 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). An "injury in fact" is "an invasion of a legally protected interest which is [] concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1. Munder argues that Marshall lacks standing because she only owes the Trust's beneficiaries—not Marshall—a fiduciary duty, so he does not suffer any injury from its breach. But this case primarily concerns the administration of the Trust's assets. As the court in *Grede v. Bank of N.Y. Mellon* noted, "[a] trustee owns the trust's assets. If these assets are depleted by fraud, the trustee may sue to redress the injury, even though the trust will distribute all of the proceeds to its beneficial owners." 598 F.3d 899, 900 (7th Cir. 2010). Marshall's asserted injury as to the improper distribution of the Trust's property is thus "an invasion of a legally protected interest which is [] concrete and particularized" and is "actual." *Lujan*, 504 U.S. at 560; *see also Grede*, 598 F.3d at 900. The other two factors, causation and redressability, follow *a fortiori*. Marshall thus has federal standing. *Lujan*, 504 U.S. at 560.

**II.     Breach of Trust**

This case turns on whether Illinois law empowers Marshall to sue his co-trustee for breaching a fiduciary duty owed to the Trust's beneficiaries. It does.

Starting with the text of the Illinois Trust Code ("ITC"), 760 Ill. Comp. Stat. 3/101 *et seq.*, the Court notes that the ITC burdens trustees with five primary fiduciary duties, namely the duties of good faith, loyalty, impartiality, prudent administration, and only incurring reasonable costs. *Id.* at 3/801–805. The violation of any of these duties is called a "breach of trust." *See id.* at 3/1001(a) ("A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of

6

trust."). Section 703 of the ITC, which governs co-trustees' actions, requires "[e]ach trustee who is not an excluded fiduciary under Section 808 [to] exercise reasonable care to prevent a co-trustee from committing a serious breach of trust; and compel a co-trustee to redress a serious breach of trust." *Id.* at 3/703(g). Marshall is not an "excluded fiduciary" within the meaning of 3/808 because the Trust does not require him "to act, omit action, or make decisions only with the consent of a directing party," *id.* at 3/808(a)(2), so the ITC requires him to prevent his co-trustee from breaching her duty of trust, *see id.* at 3/703(g). By suing to address what he believes is a breach of his co-trustee's fiduciary duties, *see* Doc. 1 at 15–17, Marshall is vindicating the law, not flouting it.

The Third Restatement of Trusts, which holds persuasive authority in Illinois, *see In re Est. of Lieberman*, 391 Ill. App. 3d 882, 890 (2009) ("Restatements are not binding on Illinois courts unless adopted by our supreme court . . . [they] merely provide[] guidance."), further supports Marshall's position. Section 94 of the Restatement says:

> A suit against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only **by a beneficiary or by a co-trustee, successor trustee, or other person** acting on behalf of one or more beneficiaries.

Rest. (3d) Trusts § 94 (emphasis added). Comment c to § 94 further states that:

> **If a trust has several trustees, one or more of them can maintain a suit against one or more others to** compel them to perform their duties under the trust or to enjoin them from committing or **compel them to redress a breach of trust.** On the duty of a co-trustee to bring such a suit, see § 81.

*Id.* § 94 cmt. c (emphasis added). In turn, § 81 indicates a co-trustee is required "to use reasonable care to prevent a co-trustee from committing a breach of trust and, *if a breach of trust occurs, to obtain redress.*" *Id.* § 81 (emphasis added). This makes it plain that Marshall has the power to sue his co-trustee for allegedly violating her fiduciary duties. *See In re Est. of*

7

*Lieberman*, 391 Ill. App. 3d at 890; *see also* 760 Ill. Comp. Stat. 3/106 ("The common law of trusts and principles of equity supplement this Code, except to the extent modified by this Code[.]").

Nevertheless, Munder leans heavily on *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605 (2007), to argue that *only* trust beneficiaries—not trustees—can maintain an action for a breach of trust. Doc. 16 at 3 (arguing that "[b]y virtue of the fiduciary relationship of the trustee and beneficiary, it is the trust beneficiary who has the right to bring an action for damages based on a breach of fiduciary duty by the trustee" (quoting *Fuller Family*, 371 Ill. App. 3d at 615)). But the *Fuller Family* court did not consider whether a trustee could sue a co-trustee to remedy an alleged breach of trust. It only decided that breach of trust claims belong to a trust's beneficiaries, not the trust itself, and that a settlement agreement's release clause relating to "trust property" therefore does not absolve the trustee of any breach of trust claims the beneficiaries could bring. *Fuller Family*, 371 Ill. App. 3d at 614–15. This holding does not help the Court answer the question it faces now.

The cases the *Fuller Family* court and Munder cite to support its holding, *Parish v. Parish*, 29 Ill. 2d 141 (1963), and *Burrows v. Palmer*, 5 Ill. 2d 434 (1955), likewise do not address the question the parties ask this Court to answer. The relevant portion of the *Parish* court's decision decided that a deceased beneficiary's executor could compel trustees to perform under a trust agreement or sue them for breach of trust. 29 Ill. 2d at 149 (citing Rest. (1st) Trusts §§ 199, 205). The *Parish* court did not address whether a trustee may sue another co-trustee for breach of trust, so its holding is not on point. The *Burrows* court decided that contingent remaindermen hold a sufficient interest in trust property such that they are allowed to sue trustees for breach of trust. 5 Ill. 2d at 438–41 (citing Rest. (1st) Trusts §§ 199, 214). This

8

decision is likewise immaterial to whether beneficiaries have an exclusive right to bring breach of trust suits against trustees. Rather, the *Parish* and *Burrows* holdings merely define who counts as a beneficiary and reemphasize the bedrock principle of trust law that beneficiaries may sue trustees for breach of trust. The Court is thus unpersuaded that *Fuller Family*'s statement that "it is the trust beneficiary who has the right to bring an action for damages based on a breach of fiduciary duty by the trustee," 371 Ill. App. 3d at 615, preempts Marshall from "compel[ling] a co-trustee to redress a serious breach of trust." 760 Ill. Comp. Stat. 3/703(g).[3]

Ultimately, this Court finds that Marshall can sue Munder for breach of trust. Because Munder did not challenge the sufficiency of Marshall's allegations with respect to Count I, and grounded her argument for Count II's dismissal solely on the assumption that this Court would dismiss Count I, the Court ceases its inquiry here and denies Munder's motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court denies Munder's motion to dismiss [16].

Dated: November 7, 2023

SARA L. ELLIS
United States District Judge

---

[3] Munder further claims that "every single beneficiary has ratified the specific payments Plaintiff complains of." Doc. 21 at 8. She may be correct that the Trust's beneficiaries can waive their claim against her for breach of fiduciary duty, which Munder argues would absolve her of any liability and end the (legal, not family) feud. *See, e.g.*, *McCormick v. McCormick*, 180 Ill. App. 3d 184, 201 (1988) ("As a general rule, a beneficiary of a trust who consents to or approves of an act, omission or transaction by a trustee, may, upon the ground of waiver or estoppel, be precluded from subsequently objecting to the impropriety of such act, omission or transaction." (citing *Chicago Title & Tr. Co. v. Shellaberger*, 399 Ill. 320 (1948))). But the question of whether the Trust's beneficiaries ratified Munder's actions is not ripe, and the Court does not consider the merits of Munder's argument.