UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES P. MARSHALL, not individually but in his capacity as co-trustee of the 4-M River Farm Trust, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 23 C 1958 |
| v. | ) ) | Judge Sara L. Ellis |
| BETH MUNDER, individually and as co-trustee of the 4-M River Farm Trust, | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

James Marshall, one of two trustees of the 4-M River Farm Trust ("the Trust"), filed suit on March 28, 2023, against Beth Munder, his co-trustee, for allegedly breaching her duty of trust by making improper disbursements from the Trust, unilaterally exercising control over Trust accounts, and other miscellaneous actions that Marshall contends are breaches of trust. Munder moved to dismiss his complaint, arguing that Marshall lacked standing to bring breach of trust claims against a co-trustee. The Court denied that motion to dismiss, noting that longstanding Illinois law and bedrock trust law principles allow trustees to maintain a breach of trust action against a fellow trustee to remedy alleged breaches of trust. *See* Doc. 22. After the Court's decision, Marshall filed an amended complaint that once again alleges breach of trust (Count I) and seeks various forms of relief, stylized as separate counts (Counts II–IV). Doc. 40. Munder now moves to dismiss this complaint under Rules 9 and 12 of the Federal Rules of Civil Procedure, arguing that the statute of limitations bars Marshall's breach of trust claim, that Marshall insufficiently pled underlying fraud allegations that lay at the heart of his breach of trust claim, and that his requested relief subsequently fails without a viable claim. In the

1

alternative, Munder asks the Court to strike certain of Marshall's allegations. However, the Court finds that Marshall's claims are not time-barred, nor do they sound in fraud to the extent necessary to dismiss or strike them under Rule 9. The Court therefore denies Munder's motion to dismiss Marshall's amended complaint.

## BACKGROUND[1]

**I.  Facts**

The facts in Marshall's amended complaint are largely identical to the allegations in his original complaint, with some minor additions. Roberta Marshall established the Trust on September 1, 1992, for the benefit of her great-grandchildren. Although Roberta had four children, she named only two—Marshall, now a resident of Florida, and Munder, presently a resident of Illinois—as co-trustees. When she formed the Trust, Roberta acknowledged prior gifts of $10,000 to each of her living grandchildren and directed the trustees to make additional $10,000 gifts to individual trusts in the name of any future born grandchildren. Roberta also directed the trustees to make $10,000 gifts to individual trusts in the name of any future born great-grandchildren. Aside from these gifts, the terms of the Trust direct the trustees to make payments from the Trust's income and principal that they deem necessary for the health, maintenance, education, and support of Roberta's grandchildren and great-grandchildren. Despite the birth of a great-grandchild in January 2022, the trustees did not make the requisite $10,000 gift within the first year of that great-grandchild's birth.

The Trust holds a one-half interest in the Marshall Family Farm, which consists of about 800 acres of land in LaSalle County, Illinois. Aside from the income that the farm generates, the

---

[1] The Court takes the facts in the background section from Marshall's amended complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Munder's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

Trust accumulates wealth from Department of Agriculture ("DOA") subsidies that the DOA pays to the Marshall Family Farm. Since December 31, 2014, these income streams have generated over $335,000 in Trust revenue. Although Marshall and Munder are co-trustees, Munder had exercised exclusive control over the Trust's bank account since December 31, 2014, through Marshall's filing of this case. In 2016, Munder began distributing Trust funds to Roberta's children without consulting Marshall or obtaining his consent as co-trustee. Munder split $20,000 equally among Roberta's four children, including herself and Marshall, in April 2016. She then distributed another $60,000 in the same manner in April 2017. In March 2018, Munder unevenly distributed a total of $12,160 between the four children. Finally, in March 2019, Munder paid a total of roughly $1,900 to herself and two siblings, excluding Marshall from this distribution.

Munder made further distributions of Trust funds to Roberta's ten grandchildren without Marshall's consent. In December 2020, two events occurred. First, Munder distributed $50,000 between the grandchildren despite Marshall proposing distributing only $12,000. Munder argued that $50,000 was justified because her "generation never received a dime in personal distributions from 4-M" and she felt the grandchildren should have the opportunity to invest their portions of the Trust as they desired. Second, after Marshall learned about the $50,000 distribution, he demanded control of the Trust's bank account. Munder refused and added that she received legal and financial advice that the $50,000 distribution was proper. Then, in December 2021, after Marshall asked Munder to stop making further distributions while he obtained legal advice concerning the Trust's administration, Munder distributed a total of $10,000 to each of the ten grandchildren and $2,585.58 to a separate family-owned business that Munder operates. Munder continued to make disbursements in April and May of 2022 in the

amount of $16,533, which took the form of tax payments to the Illinois Department of Revenue and the United States Treasury on Roberta's grandchildren's' behalf. Marshall did not consent to these disbursements and did not know of the 2022 payments until after he filed suit.

Aside from her distributions of Trust funds, Marshall complains about several of Munder's other actions. In 2018, Munder worked with an attorney to revise the terms of the Trust to remedy several problems the attorney claimed would occur after Roberta's grandchildren each turned thirty. After Marshall rejected the revised language, Munder paid the attorney nearly $30,000 from the Trust for his services without providing Marshall with any invoices. In 2021, after Marshall obtained an opinion letter from a different attorney concerning Munder's operation of the Trust, Munder refused to pay this attorney's fees on the grounds that Marshall did not consult her about obtaining the letter. Munder also transferred the Trust's bookkeeping duties to her sister-in-law without Marshall's consent; denied Marshall access to the Trust's check register; failed to send Marshall original versions of Trust documents; operated a farm in competition with the Trust's business; and declined to sign an agreement with a local government entity because of her disputes with Marshall and other relatives concerning the operation of the other farm.

Marshall alleges that Munder's actions amount to a breach of trust. He sued on March 28, 2023, seeking actual and punitive damages of over $185,000 for the Trust, as well as Munder's removal as co-trustee.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in

4

the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Munder first argues that the statute of limitations bars Marshall's breach of trust claim, and that his requested relief in the remaining claims of his complaint is subsequently moot. She next argues that Rule 9 bars several of Marshall's allegations, which she claims "sound in fraud." Doc. 46 at 10. Finally, Munder argues that if the Court is inclined to allow Marshall's amended complaint to proceed, it should still strike all time-barred allegations and those that fail Rule 9's more scrutinizing standard. The Court rejects her arguments in full.

**I.     Statute of Limitations**

Munder argues that Marshall's factual allegations make plain that his breach of trust claim first accrued on April 5, 2016 with respect to Munder's alleged improper distributions of trust funds, and on December 31, 2014 with respect to Munder's supposed improper exclusive control over the Trust's bank account. According to Munder, because Illinois law provides a five-year statute of limitations for a breach of a fiduciary duty claim (such as a breach of trust), *see* 735 Ill. Comp. Stat. 5/13-205 (five-year statute of limitations for "all civil actions not otherwise provided for" by law); *see also Halperin v. Halperin*, 750 F.3d 668, 671 (7th Cir.

5

2014) ("The applicable Illinois statute of limitations [for breach of fiduciary duty] is five years."), and because Illinois does not apply the continuing violation doctrine to such claims, *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) ("Unlike tort claims involving an ongoing or continuing series of acts in which the limitations period does not run until the date when tortious acts cease, where the tort claims arise out of contract, the limitations period begins at the time of the breach or when the plaintiff reasonably should be aware of its injury and its wrongful cause."), Marshall's belated filing of this case on March 28, 2023, means that his breach of trust claim is "hopelessly time-barred," *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, No. 15 C 3806, 2015 WL 5062823, at *8 (N.D. Ill. Aug. 26, 2015). Because Count I is time-barred, Munder argues, the Court should also dismiss Marshall's requested relief in Counts II–IV.

A continuing violation "exists when the defendant commits discrete but repeated violations." *Bernard v. Scott*, 501 F. Supp. 3d 611, 621 (N.D. Ill. 2020). The continuing violation doctrine holds that "where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345 (2002); *see also Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005) ("Where a cause of action arises not from individually identifiable wrongs but rather from a series of acts considered collectively, the Illinois Supreme Court has deemed application of the continuing violation rule appropriate."). However, "the continuing violation rule does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Rodrigue*, 406 F.3d at 443. *Compare Cunningham v. Huffman*, 154 Ill. 2d 398, 406 (1993) ("When the cumulative results of continued negligence is the cause

6

of the injury, the statute of repose cannot start to run until the last date of negligent treatment."), *with Belleville Toyota*, 199 Ill. 2d at 349 ("Rather, each allocation constituted a separate violation of section 4 of the Act, each violation supporting a separate cause of action. Based on the foregoing, we agree with defendants that the appellate court erred in affirming the trial court's application of the so-called continuing violation rule.").

Munder correctly identifies that the continuing violation doctrine does not apply to breach of fiduciary duty claims under Illinois law, meaning the Court must dismiss Marshall's amended complaint if he failed to bring his claim in a timely manner—even if he alleges facts that would otherwise demonstrate a continuing violation. *See, e.g.*, *In re marchFIRST Inc.*, 589 F.3d at 904; *Uppal*, 2015 WL 5062823, at *8; *In re Nat'l Jockey Club*, 451 B.R. 825, 832 (Bankr. N.D. Ill. 2011) ("The continuing violation doctrine does not apply to Plaintiff's breach of fiduciary duty claim."). Although Munder has identified two kinds of allegations that she believes are both irredeemably time-barred, at the motion to dismiss stage the Court will not dismiss a complaint unless its allegations "reveal that relief is barred by the applicable statute of limitations." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

And here, the Court disagrees with Munder's core theory that Marshall's "complaint plainly reveals that [his] action is untimely under the governing statute of limitations." *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (internal quotation marks omitted). To start, Munder miscomprehends when Marshall's breach of trust claims accrued. She argues that because Marshall alleges that she made an impermissible disbursement from the Trust on April 5, 2016, and because Marshall knew about that disbursement, he had a cognizable breach of trust claim from that date, meaning the five-year clock expired on April 5, 2021, almost two years before Marshall filed suit. Munder then argues that subsequent

7

disbursements from the Trust—which Marshall alleges were all contrary to its terms—are irrelevant because they all fold into a single, dead breach of trust claim that the continuing violation doctrine cannot revive. But Munder's error lies in assuming that the disbursements she made from the Trust lend themselves to the type of claim the continuing violation doctrine seeks to preserve. Rather, each disbursement related to individual, discretionary decisions she made instead of a series of "discrete but repeated violations." *Scott*, 501 F. Supp. 3d at 621. Here, Marshall alleges that Munder made no fewer than six disbursements resulting from independent acts within the five years preceding his complaint. Every allegedly wrong disbursement is on its own terms an actionable breach of trust not subject to the continuing violation doctrine. *See Rodrigue*, 406 F.3d at 443 (finding that hundreds of "cashed or deposited . . . checks over an 85-month period" each constituted individual causes of action); *Belleville Toyota*, 199 Ill. 2d at 349 (continuing violation doctrine does not apply to repeated violations when each violation constituted a separate act); *cf. Cothron v. White Castle System, Inc.*, 477 F. Supp. 3d 723, 730–31 (N.D. Ill. 2020), *aff'd* 79 F.4th 894 (7th Cir. 2023) ("The injuries resulting from these violations do not need time to blossom or accumulate. Time may exacerbate them, but an injury occurs immediately upon violation."). This means that although the Trust disbursements Munder made before March 28, 2018 (five years before Marshall filed suit) are beyond the reach of Marshall's breach of trust claim, Marshall can nevertheless proceed against those Munder made after that date.[2]

---

[2] Munder renews her argument that if the Court trims Marshall's monetary allegations, then the Court would lose jurisdiction. *See* Doc. 46 at 10 n.5. As the Court noted in its Opinion denying her first motion to dismiss, "[i]f the complaint *as filed* puts more than $75,000 at issue, then a district court has jurisdiction and may resolve on the merits every legal theory and aspect of damages. Whether [28 U.S.C.] § 1332 supplies subject-matter jurisdiction must be ascertained at the outset; events after the suit begins do not affect the diversity jurisdiction." Doc. 22 (quoting *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) (emphasis added)). Regardless, Marshall's complaint still alleges that Munder made more than $75,000 in total disbursements after March 28, 2018. *See* Doc. 40 ¶¶ 29–33, 51–61 (detailing

The Court also disagrees with Munder's argument that it must dismiss Marshall's breach of trust claim based on her allegedly exclusive control over the Trust's bank account. Munder claims that because Marshall alleges that the pair jointly established the Trust's bank account, and that he did not contest her custodial role from the time they established the account, Marshall obviously would have known that she was exercising control over the bank account. However, as Marshall clarifies in his response to Munder's motion to dismiss, his true complaint is that she continued to unilaterally exercise control over the bank account without his consent after Marshall requested Munder to allow him to maintain the bank account in December 2020. *See* Doc. 47 at 7–8 (citing 760 Ill. Comp. Stat. 3/703(e) ("A trustee may delegate to a co-trustee for any period of time any or all of the trustee's rights, powers, and duties. Unless a delegation was irrevocable, a trustee may revoke a delegation previously made.")). At this early stage in the litigation, the Court accepts Marshall's allegation. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint[.]"); *Huon v. Breaking Media, LLC,* 75 F. Supp. 3d 747, 755 n. 2 (N.D. Ill. 2014) ("In reviewing a motion to dismiss, the Court may consider . . . additional facts . . . in the plaintiff's response to the motion . . . as long as those additional facts are consistent with the allegations in the complaint[.]"). Including the fact that Marshall sought to take control over the bank account in December 2020, Munder did not withhold access to Trust account documents until Marshall requested access to and control over the account on December 12, 2020. *See* Doc. 40 at 113–14. Thus, because Marshall filed his complaint on March 28, 2023, at this stage, the Court cannot

---

allegedly improper disbursements in excess of $75,000). Thus, the Court finds that the complaint independently satisfies the amount-in-controversy requirement for diversity jurisdiction, even only considering allegedly improper disbursements made after March 28, 2018. *See* 28 U.S.C. § 1332(a).

find that any breach of trust claim arising from his inability to access the Trust account had lapsed. *See Halperin*, 750 F.3d at 671 ("The applicable Illinois statute of limitations [for breach of fiduciary duty] is five years.").[3]

Finally, because the Court does not dismiss Count I of Marshall's complaint, the Court denies Munder's motion to dismiss Counts II–IV as well because she did not challenge their individual sufficiency, but rather based her motion to dismiss those counts on the assumption that this Court would dismiss Count I.

## II. Rule 9

Munder next identifies six statements that contain language arguably accusing her of fraudulent conduct. Doc. 46 at 11–13 (citing Doc. 40 ¶¶ 20, 82, 82(b), 82(c), 82(g), 82(h)). Munder points to Marshall's allegation that "she never disclosed" her establishment of "a separate bank account for [the Trust]," Doc. 40 ¶ 20, and his averments that she acted "alone or in concert with others," *id.* ¶ 82, "misrepresent[ed]" facts to him, *id.* ¶ 82(b), possessed an "improper purpose" in her dealings, *id.* ¶ 82(c), and worked with "a personal agenda having nothing to do with the best interests of the 4-M Trust," *id.* ¶¶ 82(g)-(h). Munder argues that these allegations means that Marshall's breach of trust claim "sounds in fraud" and that his amended complaint does not stand up to Rule 9's stricter pleading standards. *Borsellino v. Goldman Sachs Corp.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements.").

---

[3] Because Munder did not argue that any breach of trust claim based on Marshall's inability to access the Trust accounts fails to state a claim for any other reason aside from being untimely, the Court does not further scrutinize the sufficiency of his allegations.

A claim "sounds in fraud" if it "is premised upon a course of fraudulent conduct." *Id.* However, even if a complaint contains allegations of fraud, the claim(s) those allegations support are not subject to dismissal if they are also based on separate allegations of non-fraudulent conduct. *See Fed. Deposit Ins. Corp. v. Patel*, No. 19 C 6917, 2020 WL 6681348, at *4 (N.D. Ill. Nov. 12, 2020) (declining to apply Rule 9(b) to breach of fiduciary duty claim and noting "to the extent that the complaint alleges both fraudulent and nonfraudulent forms of concealment, only the first allegation is even subject to—and thus potentially dismissible under—Rule 9(b)"); *Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 837 (N.D. Ill. July 11, 2016) ("In the absence of underlying fraud allegations, claims for breach of fiduciary duties are generally not subjected to heightened 9(b) requirements."); *Cement-Lock v. Gas Tech. Inst.*, No. 05 C 18, 2005 WL 2420374, at *17 (N.D. Ill. Sept. 30, 2005) (declining to apply Rule 9(b) to breach of fiduciary duty claim that alleged breaches "based on their alleged self-dealing, non-arm's-length deals, and misappropriation of Cement-Lock Group's monetary and intellectual property, even in the absence of fraud").

Here, Munder identifies a smattering of allegations that plead vaguely fraudulent conduct; however, this handful of allegations fails to elevate Marshall's breach of trust claim to one that sounds in fraud and is therefore subject to Rule 9's stricter standard. *Borsellino*, 477 F.3d at 507. Of the six allegations Munder identifies, she only provides support for her contention that they claim fraudulent conduct with respect to Marshall's failure to disclose and misrepresentation allegations. *See* Doc. 46 at 11–12 (citing *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639, 649 (7th Cir. 2019) ("An omission or failure to disclose . . . may be actionable as constructive fraud or fraudulent concealment if the defendant was under a particular duty to speak, which may stem from a fiduciary duty or a similar relationship of trust

11

and confidence."), and *Cornielsen v. Infinium Cap. Holdings, LLC*, 168 F. Supp. 3d 1033, 1042 (N.D. Ill. 2016) ("A fiduciary duty claim premised on the allegation that a defendant knowingly misled a plaintiff in breach of a fiduciary duty sounds in fraud and therefore is subject to the heightened pleading standards of Rule 9(b).")). With respect to the other four allegations, the Court does not read Marshall's factual claim that Munder acted "in concert with others" as pleading breach of trust based on conspiracy to commit fraud, but as a (perhaps overstated) way of pointing to other people such as Craig Hasenbalg, an attorney with whom Munder allegedly worked to potentially amend the Trust. Doc. 40 ¶ 82. And the Court has failed to find a case that holds that an allegation sounds in fraud when it merely accuses the defendant of acting with an "improper purpose" or with "a personal agenda." Doc. 40 ¶ 82(c), (g)–(h).

At first blush, the Court is unconvinced that a mere two paragraphs that arguably plead fraudulent conduct transform Marshall's breach of trust claim into one that "is premised upon a course of fraudulent conduct." *Borsellino*, 477 F.3d at 507. But the Court need not go that far, because there is ample, non-fraudulent conduct that Marshall pled that supports his breach of trust claim. To start, the crux of Marshall's complaint, and the subject of most of his factual allegations, are the allegedly improper disbursements of Trust funds. *See, e.g.*, Doc. 40 ¶¶ 29–33, 51–61, 82(a). There are other non-fraudulent allegations of misconduct involving Trust funds, including Munder's alleged improper payment of $30,000 to Hasenbalg, and her refusal to reimburse attorney's fees that Munder incurred related to the Trust. *See id.* ¶¶ 82(c), (e). And Marshall alleges non-financial misconduct as well. *See id.* ¶ 82(d) (Munder allegedly failed and refused "to share documents, information, books and records and control of the 4-M Bank Account"), *id.* ¶ 82(f) (Munder allegedly delegated "bookkeeping functions for the 4-M Trust to" a different sibling despite Marshall's objections). Given the inclusion of ample allegations of

12

non-fraudulent conduct against Munder, the Court finds that Rule 9 does not apply to Marshall's breach of trust claim and denies Munder's motion to dismiss on this ground. *See Patel*, 2020 WL 6681348, at *4.

### III. Motion to Strike

Munder alternatively asks the Court to strike individual allegations that she identifies as time-barred or unsatisfactorily pleaded under Rule 9. Rule 12(f) allows the Court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "In general, the motion to strike is disfavored by the federal courts." *Balabanos v. N. Am. Inv. Grp., Ltd.*, 708 F. Supp. 1488, 1497 (N.D. Ill. 1988); *see also Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 904 (E.D. Wis. 2005) (denying motion to strike allegations from complaint, noting "[a]s a general rule, motions to strike are disfavored and infrequently granted."). To prevail on a motion to strike, the moving party must show that the challenged allegations have no possible bearing upon the subject matter of the litigation and will be prejudicial to it. *Nwachukwu v. Karl,* 216 F.R.D. 176, 178 (D.D.C. 2003). The Court possesses considerable discretion to grant or deny this motion. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992).

Aside from one sentence urging the Court to "strike all allegations which are time-barred . . . as well as all inadequately-pled allegations of fraudulent conduct," Doc. 46 at 14, Munder does not show how and makes no argument to explain why these allegations (that she only identifies in her conclusion) do not relate to the litigation or would cause her prejudice if they remain in Marshall's amended complaint. The Court, on its own examination, fails to see how they would be either of those things. Accordingly, in the exercise of its discretion, the Court denies Munder's motion to strike. *See Talbot*, 961 F.2d at 664–65.

## CONCLUSION

For the foregoing reasons, the Court denies Munder's motion to dismiss [46].

Dated: June 5, 2024

                                                          SARA L. ELLIS
                                                          United States District Judge